UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TONKA HAYNES (#338440)

VERSUS                                         CIVIL ACTION

LT. CLARENCE PARKER, ET AL                     NUMBER 13-818-JJB-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, January 20, 2015.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TONKA HAYNES (#338440)

VERSUS                                              CIVIL ACTION

LT. CLARENCE PARKER, ET AL                          NUMBER 13-818-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 10. The motion is not opposed.

For the reasons which follow, the defendants' motion should be granted in part, dismissing all of the plaintiff's claims except for the plaintiff's claims against defendant Lt. Parker for excessive use of force and deliberate medical indifference.

## I. Background

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Clarence Parker, Capt. Gary Aymond and Sgt. Frye. Plaintiff alleged that he was subjected to an excessive use of force, retaliation, negligence, conspiracy and deliberate indifference to his serious medical needs, all in violation of his constitutional rights. Plaintiff sought compensatory and punitive damages.

Specifically, the plaintiff alleged that on September 7, 2012,

Sgt. Frye told him to pack his personal property, and then restrained him and escorted him to a shower cell. Plaintiff alleged that sometime later Sgt. Frye, Lt. Parker and Capt. Aymond returned to the shower cell and ordered him to come to the cell bars and turn with his back to the cell bars. Plaintiff alleged that when he complied Sgt. Frye pulled him by the restraints to the cell bars and then Lt. Parker sprayed him with a chemical agent in the face and neck for three to five seconds. Plaintiff alleged that Capt. Aymond and Sgt. Frye stood by laughing during the incident.

Plaintiff alleged that when he asked why he had been sprayed with a chemical agent, Capt. Aymond also sprayed him with a chemical agent. Plaintiff alleged that Capt. Aymond said he hoped the plaintiff would go blind.

Plaintiff alleged that Sgt. Frye ordered him to rinse his eyes but the water was too hot and caused the plaintiff intense discomfort. Plaintiff alleged that when he asked to be examined by medical personnel, Lt. Parker told him he would be seen by an emergency medical technician (hereafter "EMT"), but not on his shift.

Plaintiff alleged that he was restrained and escorted to administrative segregation by Lt. Parker and Capt. Aymond. Plaintiff alleged that he was examined by an EMT approximately five to seven hours after the incident.

Plaintiff alleged that Lt. Parker issued him two false disciplinary reports following the incident.

Defendants Lt. Parker and Capt. Aymond moved for summary judgment relying on a statement of undisputed facts and the results of Administrative Remedy Procedure (hereafter "ARP") number LSP-2012-3040.[1] Plaintiff did not file any opposition or other response to this motion.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c).

A party may not rest upon mere allegations or denials in his pleadings to oppose a motion for summary judgment. *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986); *Fontenot v. Upjohn*

---

[1] Sgt. Frye was not served with a summons and the Complaint and did not participate in the defendants' motion for summary judgment. Summons was returned unexecuted on March 13, 2014 as to defendant Sgt. Frye. Record document number 8. According to the Process Receipt and Return Form USM-285, service was not accepted for Sgt. Frye because he is no longer employed by the Department of Corrections. *Id*. Plaintiff took no action to provide the U.S. Marshal with an address at which defendant Sgt. Frye could be served.

3

*Company*, 780 F.2d 1190 (5th Cir. 1986); *John Hancock Mut. Life Ins. v. Johnson*, 736 F.2d 315 (5th Cir. 1984).[2]

## B. Failure to Exhaust Administrative Remedies

Defendants argued that the plaintiff failed to exhaust available administrative remedies regarding the claims in the complaint except for his excessive use of force claims against Lt. Parker and Sgt. Frye. Specifically, the defendants argued that the plaintiff filed ARP LSP-2012-3040 complaining about an excessive use of force on September 7, 2012, which is the subject of the plaintiff's civil rights Complaint. Defendants argued that in the ARP the plaintiff complained that Sgt. Frye jerked his restraints and Lt. Parker sprayed him with a chemical agent. Defendants argued that the plaintiff did not alert prison officials to any claim against Capt. Aymond. Defendants argued that only the plaintiff's excessive use of force claims against Lt. Parker and Sgt. Frye were exhausted.[3]

---

[2] A review of the record showed that the plaintiff filed a verified Complaint. The court can properly treat a verified complaint as an affidavit in opposition to a motion for summary judgment since the plaintiff was competent and made the assertions based on personal knowledge. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77 (5th Cir. 1987). However, the factual allegations in the plaintiff's verified Complaint did not address the defendants' failure-to-exhaust defense or the basis for Lt. Parker's motion as to the plaintiff's false disciplinary report claim.

[3] Defendants did not seek summary judgment on the plaintiff's deliberate medical indifference claim nor did they specifically argue that the plaintiff failed to exhaust that claim.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules.

*Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

Under the Fifth Circuit's strict approach to the Prison Litigation Reform Act's exhaustion requirement, mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The Prison Litigation Reform Act (PLRA) does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.*

Plaintiff alleged that he filed ARP LSP-2012-3040 regarding

6

the claims raised in the Complaint.[4] The summary judgment evidence showed that the plaintiff filed ARP LSP-2012-3040 on September 26, 2012, complaining that on September 7, 2012, Sgt. Frye restrained him, placed him in a shower cell and then left the unit.[5] Plaintiff complained that sometime later Sgt. Frye and Lt. Parker came to the shower cell and ordered him to come to the bars so that they could remove his restraints.[6] Plaintiff complained that Sgt. Frye jerked on his restraints pinning him against the cell bars while Lt. Parker sprayed him with a chemical agent.[7] Plaintiff complained that he was told to rinse the chemical agent off but the water only intensified the burning.[8] Plaintiff complained that when he requested medical treatment, Lt. Parker told him he would be examined by an EMT but he did not receive medical treatment for several hours following the incident.[9] Plaintiff alleged that Sgt. Frye restrained him and Capt. Aymond and Lt. Parker escorted him to administrative lockdown.[10]

The summary judgment evidence showed that on October 1, 2012,

---

[4] Record document number 1, p.3, ¶ II.C.1.

[5] Record document number 10-3, pp. 4-6.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

the plaintiff amended his ARP to clarify that his ARP was against the A-Team, consisting of Lt. Parker, Sgt. Frye and Capt. Aymond (identified as Capt. Amond), rather than the B-Team as identified in his original ARP.[11]

On November 28, 2012, the First Step Response was issued.[12] In the First Step Response prison officials wrote, "In your letter of complaint dated September 26, 2012, while housed at Camp D, you state that Captain Gary Aymond and Lieutenant Clarence Parker used a chemical agent on you for no reason."[13] The First Step Response did not mention the plaintiff's Amending A.R.P. Contrary to the First Step Response, the plaintiff's ARP did not accuse Capt. Aymond of using a chemical agent on him.

On December 7, 2012, the plaintiff advised prison officials that he was not satisfied with the First Step Response and he wished to proceed to the Second Step of the ARP.[14] Plaintiff notified the prison officials the First Step Response was factually incorrect - his ARP "is against Sgt. Frye and Lt. Parker. Capt. A[y]mond only escorted me to the dunge[o]n."[15]

The summary judgment evidence showed that the plaintiff failed

---

[11] *Id*. at 10-11, Amending A.R.P. filed on 9-26-12.

[12] *Id*. at 12.

[13] *Id*. at 8.

[14] *Id*. at 13.

[15] *Id*.

to place prison officials on notice of a claim that on September 7, 2012, he was also sprayed with a chemical agent by Capt. Aymond, as he later alleged in the Complaint. Indeed, in both his Amending A.R.P. and his later reply to the First Step Response the plaintiff insisted that Capt. Aymond did nothing more than escort him to administrative lockdown.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.

Plaintiff's ARP provided prison officials with a fair opportunity to address his excessive use of force and medical indifference claims against Sgt. Frye and Lt. Parker, but did not provide them with notice of a claim that Capt. Aymond also sprayed him with a chemical agent.

Moreover, the summary judgment evidence showed that the plaintiff failed to exhaust available administrative remedies regarding any other claim, including but not limited to his retaliation, conspiracy, and negligence claims.

In accordance with the Adult Administrative Remedy Procedures, an inmate commences the process by writing a letter to the warden in which he briefly sets out the basis for his claim and the relief

sought.  La. Admin. Code title 22, pt. I § 325(J)(1).  The request shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is rejected.  *Id*.  If a request is rejected, it must be for one of the enumerated reasons, which must be noted on the request for administrative remedy.  *Id*. at § 325(I)(1)(a)(ii).  An administrative grievance may be rejected on grounds that it is a duplicate request.  *Id*. at § 325(I)(1)(a)(ii)(c).

The summary judgment evidence supports finding that except for his excessive use of force and deliberate indifference claims against Lt. Parker and Sgt. Frye, the plaintiff failed to exhaust available administrative remedies regarding any other claims asserted in his Complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a).

### C. Official Capacity

Defendant Lt. Parker argued that he is entitled to Eleventh Amendment immunity insofar as the plaintiff sued him in his official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al*, 502 U.S. 21, 112 S.Ct. 358 (1991).  A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*,

473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's `policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against Lt. Parker insofar as he was sued in his individual capacity for actions taken by him under color of state law which caused the

11

deprivation of constitutional rights.  However, the plaintiff did not seek any prospective injunctive relief against Lt. Parker. Therefore, the claims against Lt. Parker in his official capacity are not actionable under § 1983.

**D. False Disciplinary Reports**

Plaintiff alleged that he was issued two false disciplinary report.  Defendant Lt. Parker argued that he is entitled to qualified immunity and this claims should also be dismissed.

Under § 1983, allegations that the plaintiff was reported or punished for an act he did not commit do not amount to a denial of due process where the state provides a procedurally adequate hearing.  *Collins v. King*, 743 F.2d 248 (5th Cir. 1984).  The disciplinary procedures in effect at the state penitentiary were previously approved by this court in *Ralph v. Dees*, CA 71-94 (M.D.La.), and *Williams v. Edwards*, CA 71-98 (M.D. La.), *affirmed*, 547 F.2d 1206 (5th Cir. 1977).  These procedures meet the standards set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974), and *Stewart v. Thigpen*, 730 F.2d 1002 (5th Cir. 1984).

Defendant is entitled to summary judgment on the plaintiff's false disciplinary report claim.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Motion for Partial Summary Judgment filed by defendants Lt.

Clarence Parker and Capt. Gary Aymond be granted in part and denied in part. The motion should be denied as to the plaintiff's excessive use of force and medical indifference claims against Lt. Parker. The motion should be granted as to the plaintiff's remaining claims against these defendants, and this matter be referred back to the magistrate judge for further proceedings.

Baton Rouge, Louisiana, January 20, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE