UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TONKA HAYNES (#338440)                                              CIVIL ACTION

VERSUS

LT. CLARENCE PARKER, ET AL.                                         NO. 13-0818-SDD-EWD

**O R D E R**

Before the Court are Plaintiff's Motion for *Daubert/Kumho* Hearing to Determine Admissibility of Expert Witness (R. Doc. 68) and Motions in *Limine* (R. Doc. 90), pursuant to which Plaintiff seeks various forms of relief that the Court will address in sequence. These motions are opposed.

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Clarence Parker, Capt. Gary Aymond and Sgt. Frye, complaining that Defendants violated his constitutional rights on September 7, 2012, in several respects, including through the use of excessive force on that date. The Court has previously granted partial summary judgment to Defendants, *see* R. Docs. 39 and 40, dismissing all of Plaintiff's claims except his claim of excessive force asserted against Defendant Clarence Parker in violation of the Eighth Amendment to the United States Constitution. In this regard, Plaintiff alleges that Defendant Parker sprayed a large amount of chemical agent into plaintiff's eyes and face on that date while Plaintiff was confined in a cell, was restrained in handcuffs, was complying with Defendant Parker's commands, and was neither causing a disturbance nor offering any other provocation or justification for Defendant's use of force. Defendant Parker has asserted, in contrasting response to Plaintiff's allegations, that the

use of chemical agent against Plaintiff on the referenced date was justified because Plaintiff was disobeying repeated commands to come to the bars of the cell to allow himself to be restrained.

I.  *Daubert/Kumho* Evaluation Of Admissibility Of Expert Witnesses

Initially, Plaintiff challenges the admissibility of the opinion testimony of Defendant's expert, Kerry Najolia,[1] and requests a hearing relative to the admission of this expert's testimony at trial in accordance with *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Plaintiff challenges Najolia's testimony as being based entirely upon conjecture and as unreliable because not based on any personal knowledge of the pertinent events.  Plaintiff asserts that Najolia's report merely recites and accepts as true Defendant's self-serving version of the facts and, upon doing so, expresses an unreliable opinion that Defendant's actions were reasonable and justified under the circumstances, without substantive analysis or scientific basis or methodology.

Pursuant to Fed. R. Evid. 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to its express terms, Rule 702 does not render all expert testimony admissible.  *United*

---

[1] Plaintiff states in his second motion that he also has an objection, "possibly," to expert testimony being provided by Dr. Glen Coullard.  *See* R. Doc. 90 at p. 2.  Plaintiff, however, provides no discussion whatever relative to Dr. Coullard, and the Court can discern no basis for excluding the testimony of this medical expert.  Accordingly, this aspect of Plaintiff's motion is without merit.

*States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979). Further, even if the proposed expert testimony satisfies each of the elements set forth in the Rule, the testimony may still be excluded pursuant to the discretionary provisions of Fed R. Evid. 403, which allow a Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

When a *Daubert* challenge is made to the testimony of a proposed expert, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). When a hearing is not held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting [or denying] expert testimony.'" *Id.*

The role of the trial court is to serve as the gatekeeper for expert testimony by making a determination whether the expert opinion is reliable. As the Fifth Circuit has explained:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The Court summarized:
>
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted). The

cases following *Daubert* have expanded upon the listed factors and have explained that the list is not all-encompassing and that not every factor is required in every case. *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors as well. *See General Electric Co. v. Joiner, supra*, 522 U.S. at 146. In *Fayard v. Tire Kingdom, Inc.*, 2010 WL 3999011, *1 (M.D. La. Oct. 12, 2010), this Court explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Id.* (internal citation omitted).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g., General Electric Co. v. Joiner, supra*, 522 U.S. at 138-39 (holding that an appellate court's review of a trial court's decision to admit or exclude expert testimony under *Daubert* is made under the abuse of discretion standard); *Watkins v. Telsmith, Inc. supra*, 121 F.3d at 988 (holding that "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. V. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011), *citing* Fed. R. Evid. 702 Advisory Committee Note (2000 amend.). Further, as explained in *Scordill v. Louisville Ladder Group., L.L.C.*, 2003 WL

22427981 (E.D. La. Oct. 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Id*. at *3 (internal citations omitted).

The Supreme Court has also recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael, supra*, 526 U.S. at 150. In that vein, the Fifth Circuit has concluded that certain "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115 (5th Cir. 2006):

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", trial judges are given broad discretion to determine "whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case".

*Id*. at 1123 (internal citations omitted).

In applying the foregoing analysis in evaluating the proposed testimony and report of Kerry Najolia, the Court concludes that the testimony of this witness should be disallowed relative to the purported "reasonableness" of Defendant Parker's actions in utilizing chemical spray on

September 7, 2012.  Whereas Najolia is admittedly "an overwhelmingly qualified expert in law enforcement" (as conceded by Plaintiff, *see* R. Doc. 90 at p. 3), he expresses the opinion, based upon a review of Plaintiff's pleadings, deposition testimony, administrative grievance and self-serving documentation prepared by prison officers after the fact, that Defendant Parker's use of force on September 7, 2012 was reasonable under the totality of the circumstances.  *See* R. Doc. 65-2 at pp. 5-6.  The basis for Plaintiff's objection relative to this testimony is "not based on lack of experience, training or even expertise in the area of law enforcement; rather, unreliability stems from the fact that Najolia was not present on September 7, 2012, and it is impossible for him to reliably opine which of the sharply contested version of facts is true."  *See* R. Doc. 90 at p. 3.  Thus, instead of basing his opinion upon personal knowledge relative to any aspect of the events of the referenced date, or any particular methodology applied to those events, Najolia essentially engages in a credibility determination and appears to accept, *in toto,* Defendant's version of events.[2]  He thus concludes, without apparent factual basis, that at the time of the use of chemical agent, Plaintiff *in fact* "refused to comply" with initial orders to come to the bars to be restrained, "still refused to comply" when commanded to do so by Defendant Parker, and thus made a "decision to continue to disregard verbal commands" given by correctional officers.  *See* R. Doc. 65-2 at p. 5.  Having arrived at this entirely conjectural conclusion of fact, Najolia then renders an opinion regarding the ultimate issue in the case.  Specifically, Najolia concludes that (1) Defendant Parker's use of mace in response to such oppositional conduct by Plaintiff was "reasonable based on the totality of the circumstances [and Parker's] perception of the threat presented by Mr. Haynes to himself and others," and (2) "[t]he use of … spray on Mr. Haynes was

---

2   Although Najolia includes in his report portions of Plaintiff's version of the facts surrounding the incident in question, he discounts Plaintiff's version of those events without explanation.

required to maintain the safety, security and good order of the facility at the time of its use." *Id*. at p. 6.

The Court concludes that the proposed testimony of Kerry Najolia relative to the foregoing does not meet the test for the allowance of expert opinion evidence. As noted above, Fed. R. Evid. 702 allows for the introduction of such evidence when "the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*." (Emphasis added). Whereas Najolia is unquestionably a qualified expert in the area of law enforcement, training and use-of-force, his opinion as to the reasonableness of Defendant Parker's action in utilizing chemical spray in this case is nonetheless unreliable because it does not employ any particular analysis or methodology to the incident of September 7, 2012 but merely accepts one of two contested factual versions in this case. The Court fails to see how this will assist the jury in understanding the evidence or in reaching its own resolution of the factual questions. Even Plaintiff concedes in this case that "if he had been recalcitrant, not handcuffed, and refusing an order to come to the bars to be restrained, use of force might be reasonable." *See* R. Doc. 68 at p. 4. Plaintiff asserts, however, that "he was <u>not</u> refusing orders or recalcitrant, and was already handcuffed; thus, no force was necessary at all." *See id.* (emphasis in original). Thus, in simply accepting Defendant's version of the facts in this case, Najolia's report artificially bolsters and potentially elevates Defendant's version of the facts without any apparent basis for such enhanced credibility. This presents the type of danger that the gatekeeping function of *Daubert* is intended to alleviate, *i.e.,* the danger that the purported expert testimony will receive unwarranted weight and will encourage the fact-finder to give more weight to one side's contention than is warranted.[3] Accordingly, the Court finds that the testimony of Kerry Najolia relative to

---

3   The Court is mindful that a *pro se* prisoner will rarely, if ever, have the financial

the reasonableness of Defendant Parker's action in utilizing chemical spray would not reliably assist the jury in resolving this contested issue in this case and should therefore be excluded as to this issue. *Cf., Harris v. City of Baton Rouge*, 2005 WL 60009992 (M.D. La. April 8, 2005) (disallowing testimony by Kerry Najolia "concerning the *reasonableness of the actions of the police officer* in making [an] arrest" (emphasis added)); *Chauvin v. Sheriff Harry Lee of Jefferson Parish*, 2000 WL 1537988 (E.D. La. Oct. 16, 2000) (granting plaintiff's motion in *limine* "to exclude the testimony and report of purported expert Kerry Najolia" after defendants advised the court that they would not oppose the motion).

Notwithstanding the foregoing, the Court finds from a review of Najolia's report that Defendant Parker also intends to elicit testimony from the witness regarding the manner in which chemical spray is generally intended to be utilized, the chemical make-up of the spray utilized in this case, and the manner in which the spray accomplishes its intended deterrent effect. The witness also expresses an opinion that, whereas "a one-second burst of the spray is suggested to be deployed," the use of a greater quantity – as allegedly occurred in the instant case – is arguably "less effective that a 1-second burst," "will not increase the sensation on the skin, in the eyes or breathing ability," and "did not increase the … effects and, in fact, may [have] reduce[d] the effects of the … exposure felt by Plaintiff." *See* R. Doc. 65-2 at p. 6. According to the witness, this conclusion is based upon his many years of experience in supervising and training law enforcement officers in the use of chemical spray, in his certification since 1993 as an Instructor in the use of chemical spray by various manufacturers, and in his firsthand experience and observation of the use of chemical spray over many years. It further appears that the witness' opinion in this regard

---

wherewithal to retain the services of a countervailing expert to oppose and point out the inherent weaknesses in the opinions of the prison employees' expert.

is at least consistent with an independent study documented in a 1997 National Institute of Justice article entitled "Evaluation of Pepper Spray," wherein it is noted that in several cases where greater than a one-second burst of chemical spray was utilized, "[n]o data indicated that spraying more than one short burst produced better effects."  *See* R. Doc. 92-4 at p. 5.  Plaintiff has not provided any evidence or argument to refute this opinion expressed by Najolia and, indeed, has not addressed this aspect of the witness' opinion expressed in his report.  On the showing made, therefore, the Court finds that Plaintiff has not met his burden in opposing the opinion testimony of Najolia relative to the generalized use of chemical agent and the relative effect of greater or smaller amounts of chemical agent, and the witness' testimony in this regard shall be allowed at trial.

    II.    <u>Request To Re-Open Discovery</u>

Plaintiff next requests that, in the event that Kerry Najolia is allowed to testify as an expert at trial, Plaintiff be allowed to conduct additional discovery to "determine the number of time[s] Kerry Najolia has been hired to testify in excessive force cases at the expense of the La. Attorney General's Office against prisoners complaining of excessive force."  This request shall be denied.  The discovery period in this case expired long ago.  Plaintiff shall be entitled, however, to question the witness during cross-examination regarding the witness' history of retention by the Attorney General's Office and any potential bias.

    III.    <u>Request To Exclude Mention Of Plaintiff's Criminal Conviction And Disciplinary Record</u>

Plaintiff next seeks to exclude evidence regarding his prior conviction[s] and evidence regarding his disciplinary record during the period of his incarceration.  First, Rule 609 of the Federal Rules of Evidence allows the introduction of evidence of prior felony convictions for impeachment purposes.  Although the Rule envisions that the prejudicial effect of this evidence

may be weighed against its probative value, the law is clear that the "prejudice-weighing prerequisite to admissibility of felony convictions applies only in criminal trials." *See Miller v. Credit*, 2015 WL 1246557 (M.D. La. March 18, 2015), *citing Coursey v. Broadhurst*, 888 F.2d 338 (5th Cir. 1989). Accordingly, "Rule 609(a)(1) requires a trial judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." *Id*. Accordingly, Plaintiff's motion must be denied in this respect. Notwithstanding, the Court believes, in its discretion, that although the fact of Plaintiff's prior conviction[s] may be admissible, evidence regarding the offenses committed or the factual details surrounding or underlying the convictions should be excluded as irrelevant and as calculated only to inflame the jury. Further, the Court notes that Rule 609(b) generally mandates the exclusion of evidence of convictions if the convictions are more than ten years old or if the sentences for same were completed more than ten years prior to trial. Accordingly, the Court finds that evidence of any such age-limited convictions should also be excluded.

Plaintiff also seeks to exclude evidence regarding his disciplinary record during the period of his incarceration. In this regard, Plaintiff is correct that evidence regarding unrelated instances of misconduct is not generally admissible to show that a person has a bad character or acted improperly on another occasion, *see* Fed. R. Evid. 404(a)(1) and (b)(1). Whereas such evidence may be allowed under certain circumstances, *see* Fed. R. Evid. 404(a)(3) and (b)(2), those circumstances do not appear to be applicable in the instant case. Accordingly, it is appropriate that Defendant be barred from making reference to the details of Plaintiff's disciplinary record at trial, with the single exception that the jury may be informed that Plaintiff was moved to the shower cell on his tier on September 7, 2012 because of an unspecified pending disciplinary violation. *See* the Court's Pre-trial Order dated August 26, 2016, R. Doc. 82 at p. 5 (wherein it is noted that

testimony regarding "the underlying nature of the referenced disciplinary violation" would not be allowed).

    IV.    <u>Request For Assistance From An Inmate Counsel Substitute During Pre-Trial Hearings And At Trial</u>

Finally, Plaintiff requests that he be allowed to have present at trial a participant in LSP's Inmate Counsel Substitute program to assist him with the presentation of his evidence and the examination and cross-examination of witnesses. The Court has allowed such assistance in the past, with Plaintiff's express understanding that the designated Inmate Counsel Substitute shall not be allowed to act as an attorney and shall not be allowed to address the Court or the jury. Subject to that limitation, Plaintiff's request in this regard shall be granted.

Accordingly, based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for *Daubert/Kumho* Hearing to Determine Admissibility of Expert Witness (R. Doc. 68) and Motions in *Limine* (R. Doc. 90) are hereby **GRANTED IN PART AND DENIED IN PART**, such that (1) testimony by Kerry Najolia shall be disallowed as to the reasonableness of Defendant Parker's actions in deciding to utilize chemical spray against Plaintiff on September 7, 2012 (Items Nos. 2 and 3 of Defendant's Notice of Designation of Expert, R. Doc. 65) but shall be allowed relative to the generalized use of chemical agent, its effects, and the relative effect of a smaller or larger application of chemical agent as stated in his report, (2) testimony by Dr. Glen Coullard shall be allowed, (3) Plaintiff's request to re-open discovery relative to Kerry Najolia is denied, (4) evidence regarding the fact of Plaintiff's prior felony conviction[s] is allowed for the limited purpose stated in this Order, but evidence regarding Plaintiff's disciplinary record while incarcerated is generally disallowed except as stated in this Order, and (5) Plaintiff's request for the assistance of an LSP Inmate Counsel Substitute at trial is granted, such that Michael Zihlavsky (or designated alternative participant in

the LSP Inmate Counsel Program if Zihlavsky does not qualify) shall be allowed to sit at counsel table with Plaintiff and provide advice and assistance to Plaintiff during trial but shall not to be allowed to act as an attorney, speak on the record or address the jury or the Court.

Signed in Baton Rouge, Louisiana, on March 16, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**